**QURESHI LAW PC**
Omar G. Qureshi (Cal. Bar No. 323493)
omar@qureshi.law
1625 W. Olympic Boulevard, Suite 500
Los Angeles, California 90015
Telephone: (213) 315-5442
Fax: (213) 277-8989

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551

**MILLER ADESMAN, PLC**
Brian M. Adesman (Cal. Bar No. 312663)
adesman@qureshi.law
355 S. Grand Ave., Suite 2450
Los Angeles, California 90071
Telephone: (213) 877-8142

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA DEIGHTON, on his own behalf and on behalf of his beneficiary son, C.D., and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No.: _____<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Joshua Deighton on behalf of himself, his minor son C.D., and all others similarly situated, sets forth herein the allegations of his Complaint against Aetna Life Insurance Company ("Aetna").

## **INTRODUCTION**

1.  Even before the COVID-19 pandemic, mental illness among both children and adults was increasing dramatically in the United States. Predictably, the COVID-19 pandemic has only exacerbated this trend. For example, the number of people looking for help to cope with anxiety and depression has skyrocketed in 2020—by 93 percent and 62 percent respectively. This includes people struggling with thoughts of suicide, especially among our nation's youth. *See The State of Mental Health in America, available* at https://mhanational.org/issues/state-mental-health-america.

2.  As the Centers for Disease Control and Prevention ("CDC") has recognized: "Mental and physical health are equally important components of overall health." https://www.cdc.gov/mentalhealth/learn/index.htm. Recognizing the importance of mental health, Congress enacted the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), 29 U.S.C. § 1185a, *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. sections 1001, *et seq.*, of which the Parity Act is a part. The Parity Act's purpose was to end discrimination in the provision of insurance coverage for mental health treatment, as compared to medical and surgical services. While the Parity Act does not require health care plans to cover mental health services, if a plan chooses to cover mental health services, such coverage must be provided "at parity" with medical/surgical benefits.

3.  Aetna is in the business of insuring and/or administering group health plans within the meaning of 29 Code of Federal Regulations section 2560.503-1(m) (both fully insured and self-insured), most of which are employer-sponsored and governed by ERISA. Those ERISA-governed group health plans are

CLASS ACTION COMPLAINT

hereinafter referred to as "Aetna Plans." Unfortunately, in administering the Aetna Plans, Aetna treats mental health as less important than physical health.

4.     Although the Aetna Plans expressly require Aetna to apply generally accepted professional standards in making mental health claims determinations, Aetna imposes a set of internally developed criteria to determine which residential treatment facilities receive coverage that are far more restrictive than such standards to minimize the number of claims accepted and thereby maximizing Aetna's own profits. This conduct violates ERISA and, therefore, by bringing this lawsuit, Plaintiff seeks to end Aetna's discriminatory practice of excluding coverage for the treatment of mental illness in residential treatment facilities.

## **JURISDICTION AND VENUE**

5.     Aetna's actions in administering employer-sponsored health care plans, including making coverage and benefit determinations under the terms and conditions of the health care plans, are governed by ERISA. This Court has jurisdiction over this action pursuant to ERISA section 502(e)(1), 29 U.S.C. section 1132(e)(1), and 28 U.S.C. section 1331 (federal question jurisdiction).

6.     Further, this action is brought under 29 U.S.C. section 1132(a), (e), (f) and (g), as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA.

7.     This Court has personal jurisdiction over Aetna because ERISA provides for nationwide service of process, and Aetna has minimum contacts with the United States. *See* 29 U.S.C. § 1132(e)(2) .

8.     Plaintiff's claims, as well as claims made by the putative class, arise out of policies Aetna issued, administered, and/or implemented in this District. Moreover, Plaintiff resides in this District. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. section 1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

1

**THE PARTIES**

2   9.    Plaintiff Joshua Deighton was at all relevant times a participant under

3   a self-funded Aetna Plan[1] arranged through his employer, Fox Entertainment

4   Group, LLC. ("Fox"), as defined by ERISA section 3(7) and 29 U.S.C. section

5   1002(7).  Plaintiff brings this action on behalf of himself, his minor son C.D., and

6   all others similarly situated.

7   10.    C.D. is the 16-year-old son and dependent of Plaintiff Joshua

8   Deighton.  C.D. resides in Glendale, California.  C.D. is a beneficiary, as defined

9   by ERISA section 3(8) and 29 U.S.C. section 1002(8), of the Aetna Plan.  C.D.'s

10   insurance coverage is through his father's employment with Fox Entertainment

11   Group, LLC.

12   11.    Aetna is a corporation with its principal place of business in Hartford,

13   Connecticut.   Aetna administers and makes benefit determinations related to

14   ERISA group health care plans around the country.

15

**THE AETNA PLAN**

16   12.    Plaintiff's Aetna Plan outlines covered services for the treatment of

17   behavioral health conditions under the heading "Treatment of Mental Disorders,"

18   and states: "[c]overed expenses include charges made for the treatment of mental

19   disorders by behavioral health providers."

20   13.    Plaintiff's Aetna Plan further states that covered expenses for

21   inpatient treatment "include charges for room and board at the semi-private room

22   rate, and other services and supplies provided during your stay in a hospital,

23   psychiatric hospital or residential treatment facility."

24   14.    Plaintiff's Aetna Plan defines the term "behavioral health provider"

25   as follows:

26

27   [1] While Plaintiff's plan is a "self-funded" plan that requires benefits to be paid, in the first

28   instance, from the assets of Plaintiff's employer, most self-funded plans have stop-loss provisions that obligate the insurer to pay benefits that exceed a certain threshold.  Thus, every claim Aetna denies makes it less likely that such a stop-loss threshold will be crossed and reduces the possible stop-loss liability of Aetna and its affiliates.

CLASS ACTION COMPLAINT

**Behavioral Health Provider/Practitioner**

A licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions.

15.     Plaintiff's Aetna Plan defines the term "Residential Treatment Facility" as "an institution that meets all of the following requirements:

- Is accredited by one of the following agencies, commissions or committees for the services being provided: The Joint Commission (TJC), Committee on Accreditation of Rehabilitation Facilities (CARF), American Osteopathic Accreditation Program (HFAP) or the Council on Accreditation (COA); or is credentialed by Aetna;

- Meets all applicable licensing standards established by the jurisdiction in which it is located;

- Performs a comprehensive patient assessment preferably before admission, but at least upon admission;

- Creates individualized active treatment plans directed toward the alleviation of the impairment that caused the admission;

- Has the ability to involve family/support systems in the therapeutic process;

- Provides access to psychiatric care by a psychiatrist as necessary for the provision of such care;

- Provides treatment services that are managed by a behavioral health provider who functions under the direction/supervision of a medical director; and

- Is not a wilderness treatment program (whether or not the program is part of a licensed residential treatment facility, or otherwise licensed institution), educational services, schooling or any such related or similar program, including therapeutic programs within a school setting.

16.     Additionally, the Aetna Plan requires Mental Health Residential Treatment Programs to abide by the following:

- A behavioral health provider must be actively on duty 24 hours per day for 7 days a week;

CLASS ACTION COMPLAINT

- The patient is treated by a psychiatrist at least once per week; and
- The medical director must be a psychiatrist.

17.     The Aetna Plan specifies that "Inpatient Treatment of Mental Disorders," including "Inpatient Residential Treatment Facility Expenses" and "Inpatient Residential Treatment Expenses Physician Services" are covered at "90% per admission after Calendar Year deductible" for in-network providers and "60% per admission after Calendar Year deductible" for out-of-network providers.

## SUBSTANTIVE ALLEGATIONS

### A. Background.

18.     Congress enacted the Parity Act on October 3, 2008, as an amendment to ERISA. *See* 29 U.S.C. § 1185a.  The Parity Act became effective one year later, on October 3, 2009.  The law's purpose was to end discrimination in the provision of insurance coverage for mental health treatment, as compared to medical and surgical services.  While the Parity Act does not require health care plans to cover mental health services, if a plan chooses to cover mental health services, such coverage must be provided "at parity" with medical/surgical benefits.

19.     The Aetna Plans cover mental health services.  Therefore, under the Parity Act, Aetna must administer the Plans to ensure that:

> [T]he treatment limitations applicable to such mental health or substance use disorder benefits are *no more restrictive* than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are *no separate treatment limitations* that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added).

20.     ERISA requires Aetna to administer its Plans in compliance with the Parity Act and its implementing regulations, and to refrain from enforcing Plan terms that conflict with federal law.  ERISA also imposes strict fiduciary duties on

5

Aetna, including the duty to administer the Plan solely for the benefit of the participants and beneficiaries.

21.    Indeed, given Aetna's role in the mental health claim adjudication process, and the discretionary authority Aetna exercises, Aetna is an ERISA fiduciary, as defined by 29 U.S.C. section 1104(a).

22.    As such, Aetna is legally required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of "providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the Plans.  They must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the Plans they administer, so long as such terms are consistent with ERISA.  Indeed, as a fiduciary, Aetna owes a duty of loyalty and care to Plan participants and beneficiaries, including Plaintiff and C.D.  Aetna must also refrain from conduct that violates state and federal law.

**B. Factual Allegations Regarding C.D.**

**1. C.D. Enrolls at BNI Treatment Center.**

23.    C.D. is a minor with Autism Spectrum Disorder ("ASD" or "Autism").  ASD constitutes a disability and medical condition.  ASD is also genetic.

24.    In April 2019, C.D. had to be removed from school because he had become unstable as a result of his ASD.  C.D.'s parents, Joshua and Meredyth Deighton began looking for a residential treatment facility that could help stabilize Plaintiff in April 2019.

25.    On May 7, 2019, C.D. enrolled at BNI Treatment Center ("BNI"), a residential teen treatment center for mental health and substance abuse located in Agoura Hills near Los Angeles in California.  While at BNI, C.D. was antagonized by BNI's staff.  BNI's staff repeatedly threatened C.D., who was only a young

CLASS ACTION COMPLAINT

teenager, with calling the police on him and committing him to a hospital for involuntary psychological confinement.

26.    The mistreatment at BNI became so bad that C.D. had to be committed to a full-time residential facility out of state.

**2.  C.D. Enrolls at Daniels Academy.**

27.    On August 15, 2019, C.D. was admitted to Daniels Academy. Daniels Academy is a 24/7 residential treatment facility located in Heber City, Utah.  According to its website, Daniels Academy:

> [P]rovides a safe and therapeutic boys' boarding school environment where young men overcome past failures and learn to thrive through meaningful relationships and insightful coaching.  Our home is a safe and predictable haven where anxiety is minimized so true learning can be done.  This treatment for Autism Spectrum Disorder is primarily accomplished through authentic experiences in the local communities. We believe in giving our young men authentic life experiences in order to bridge the gap between treatment and home life.[2]

28.    Daniels Academy is duly licensed by the state of Utah to provide residential treatment services to young male clients.  To receive such a license, Daniels Academy must render residential treatment in accordance with the state of Utah's strict regulations governing residential programs.  *See* Utah Administrative Code Rule R501-19.

29.    At Daniels Academy, C.D. was seen weekly by a licensed therapist. Additionally, Daniels Academy employs medical and behavioral health professionals who are available 24 hours a day, on-call.  Daniels Academy also maintains liability insurance and is complaint with the Health Insurance Portability and Accountability Act ("HIPAA").

---

[2]  Information about Daniels Academy can be found on its website, located at https://danielsacademy.com/what-we-do/residential-life/.

CLASS ACTION COMPLAINT

**3. Aetna Denies C.D.'s Insurance Claim.**

30.    In 2019, Plaintiff submitted a claim through Plaintiff's Aetna Plan for the costs of C.D.'s treatment at Daniels Academy.  On or around August 19, 2019, Aetna sent Plaintiff a letter denying Plaintiff's claim for reimbursement.

31.    Aetna's denial letter provided the following rationale for denying Plaintiff's claim:

> We reviewed information received about the member's condition and circumstances and the member's benefit plan. We are denying coverage for Mental Health Residential Treatment. The facility is not accredited by one of the following agencies, commissions or committees for the services being provided: The Joint Commission (TJC), Committee on Accreditation of Rehabilitation Facilities (CARF), American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP) Or the Council on Accreditation (COA); or is credentialed by Aetna; A behavioral provider is not actively on duty 24 hours per day for 7 days a week; The patient is not treated by a psychiatrist at least once per week, but on an as needed basis. Therefore, Mental Health Residential Treatment is not covered under the terms of the plan.

> (Not a Covered Service Denial) This coverage denial was based on the terms of the member's benefit plan document (such as the Certificate of Coverage or benefit plan booklet/handbook, including any amendments or riders). The requested service is not covered. The plan provides limited or no coverage for this service. Please see the section of the benefit plan document that talks about what the plan covers.

32.    On or around February 4, 2020, Plaintiff submitted a level-one appeal to Aetna and a level-two appeal on or around June 1, 2020.  Aetna denied both appeals.

**4. Aetna's Denial of Coverage Violated Federal Law.**

33.    Aetna's refusal to cover C.D.'s intermediate behavioral health services under the Aetna Plan violated several federal laws, including the Parity Act.  The Parity Act requires that, when a group health plan provides both medical

8

and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A).

34.   Under the Parity Act, plans that offer behavioral health benefits are required to offer those benefits *at parity* with comparable medical or surgical benefits. The Parity Act establishes six broad benefit classifications: (a) Inpatient, in-network; (b) Inpatient, out-of-network; (c) Outpatient, in-network; (d) Outpatient, out-of-network; (e) Emergency care; (f) Prescription drugs.

35.   Within these classifications, the Parity Act requires consistency in classifying benefits that apply to intermediate services provided under a plan or coverage. The Parity Act was intended to maintain or even slightly improve coverage for intermediate levels of care—i.e., services that fall between inpatient care for acute conditions and regular outpatient care, such as residential treatment, partial hospitalization, and intensive outpatient treatment—which can be effective at improving outcomes for people with mental health conditions. Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 FR 68240-01 (Nov. 13, 2013).

36.   Daniels Academy provides intermediate services, including residential treatment. Regarding benefits for these intermediate services, the Parity Act requires that:

> Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications. For example, if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer

9

must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.

Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 FR 68240-01 (Nov. 13, 2013).

37.   In other words, Aetna must administer benefits for intermediate behavioral health facilities in a way comparable to the administration of benefits for intermediate medical facilities, such as skilled nursing and inpatient rehabilitation facilities.  Because coverage is available under the Aetna Plan for inpatient mental health and substance use disorder treatment, and because the Aetna Plan covers intermediate medical and surgical care, including rehabilitation facility services, Aetna is required to administer these benefits *at parity* with one another.

38.   Yet, Aetna's disparate requirements for ***residential treatment facilities***, and ***rehabilitation facilities***, is striking.  For example, the Aetna Plans define rehabilitation facilities as:

Rehabilitation Facility

A facility, or a distinct part of a facility which provides rehabilitative services, meets any licensing or certification standards established by the jurisdiction where it is located, and makes charges for its services.

39.   "Rehabilitative Services" are further defined as "[t]he combined and coordinated use of medical, social, educational and vocational measures for training or retraining if you are disabled by illness or injury."

40.   To comply with the Parity Act, the Aetna Plans must define intermediate behavioral health facilities *at parity* with intermediate medical health facilities, however they clearly fail to do so.

41.   For example, if Daniels Academy provided rehabilitative services (instead of residential treatment services), Daniels Academy _would qualify_ under the Aetna Plan as a "Rehabilitation Facility" as it meets the licensing standards

CLASS ACTION COMPLAINT

1   established by the jurisdiction where it is located—Utah—and makes charges for

2   its services.  This is just one illustration as to how Aetna has intentionally created

3   a restrictive definition to limit patients' access to mental health benefits in an

4   attempt to protect its own financial bottom-line, and to place their financial self-

5   interest before the needs of the insured.

6       42.    Moreover, the regulations implementing the Parity Act confirm that:

7       A group health plan (or health insurance coverage) may not impose a
        nonquantitative treatment limitation with respect to mental health or
8       substance use disorder benefits in any classification unless, under the
        terms of the plan (or health insurance coverage) as written and in
9       operation, any processes, strategies, evidentiary standards, or other
        factors used in applying the nonquantitative treatment limitation to
10      mental health or substance use disorder benefits in the classification
        are comparable to, and are applied no more stringently than, the
11      processes, strategies, evidentiary standards, or other factors used in
12      applying the limitation with respect to medical/surgical benefits in the
        classification."
13
14

15   45 C.F.R. § 146.136(c)(4).  These include the nonquantitative treatment limitations

16   applied by the Aetna Plan, including "[r]estrictions based on . . . facility type,

17   provider specialty, and other criteria that limit the scope or duration of benefits for

18   services provided under the plan or coverage."  *Id.*

19       43.    Thus, Aetna is in further violation of the Parity Act by requiring

20   residential treatment facilities to be accredited by JCAHO, other third-party

21   organizations, or Aetna while not applying this same requirement to the medical

22   and surgical benefits that fall under the same intermediate benefits classification.

23   For example, under the Aetna Plan neither hospice care agencies, nor rehabilitation

24   facilities, have this accreditation requirement.  In other words, Aetna requires

25   special accreditations for all residential facilities for mental health care but does

26   not require the same of analogous medical and surgical treatment facilities.

27   Strikingly, similar accreditation is not required of any other medical care facility

28   under the Aetna Plan.

CLASS ACTION COMPLAINT

44.     In addition to violating the Parity Act, Aetna's denial of Plaintiff's claim also violated the Public Health Service Act of 1944 ("PHS"), as amended by the Patient Protection and Affordable Care Act of 2010 ("PPACA"), which prohibits insurers from discriminating against any provider rendering a covered service and acting within the scope of their license under applicable state law:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law.

42 U.S.C. § 300gg-5(a).

45.     To comply with the PPACA, Aetna cannot discriminate against a provider that renders a covered service within the scope of its license.  The state of Utah, *not* Aetna, decides whether Daniels Academy qualifies as a residential treatment facility and the state of Utah decided that Daniels Academy does, in fact, qualify.  As such, Aetna capriciously set itself above the governing regulatory body—a clear encroachment beyond the bounds set by Aetna's fiduciary duties.

46.     Because the Aetna Plans are subject to the PPACA and the Parity Act, Aetna was required to cover the residential services that C.D. received at Daniels Academy to comply with these federal regulations.

**5.   Aetna's Denial Violated the Terms and Conditions of the Aetna Plan.**

47.     Aetna's denial letter improperly alleged Daniels Academy did not meet the Aetna Plan's requirements for a covered residential treatment facility because a behavioral health provider was not "actively on duty 24 hours per day for 7 days a week."  Denying coverage on this basis was unjustified because Daniels Academy did, in fact, employ medical and behavioral health professionals "actively on duty 24 hours per day for 7 days a week."  Those medical professionals were actively on-duty and *on-call* 24 hours per day.  Plaintiff explained in his appeal that the Aetna Plan did not require medical professionals

to be *on-site* 24-hours a day, just "*on-duty*."  Thus, by the plain language of the plan, Daniels Academy clearly qualified.  Plaintiff pointed-out that Aetna was violating its fiduciary duty by interpreting plan language in its favor by utilizing an overly restrictive interpretation of otherwise ambiguous plan language.

**6. Aetna Applies the Terms and Conditions of the Aetna Plans Inconsistently Based on Whether the Provider Is a Participating or Non-Participating Provider.**

48.    Plaintiff is informed and believes that Aetna's actual practice is to only require 24/7 on-site behavioral practitioners for *non-participating providers*. Participating providers are not required to maintain professional behavioral health providers on-site 24/7 to receive plan benefits—this requirement is waived.

49.    The disparity between how participating and non-participating residential treatment facilities are treated is never disclosed or identified in the Aetna Plans.  In other words, Plaintiff's treatment options were exposed to significantly disparate standards of medical practice based on the fact that Plaintiff chose a non-participating residential treatment facility for C.D's treatment.  This disparity in practice is neither justified nor permitted by the Aetna Plans and, as such, Aetna violated the terms and conditions of Plaintiff's Plan.

50.    Aetna's restrictions for coverage placed on Daniels Academy, including an <u>on-site</u> behavioral health provider 24/7, violate generally accepted standards, do not align with Utah's licensing requirements for residential treatment facilities, and do not even align with the express requirements in the Aetna Plan, which only requires "A behavioral health provider . . . actively <u>on duty</u> 24 hours per day."  This requirement places an unjustified and inappropriate burden on residential treatment centers by forcing them to add unnecessary clinical staffing. This, in turn, inflates the cost of mental health treatment and undermines best practices and efficiencies that have been developed over time for the delivery of mental health services in a residential setting.  In addition, such stringent standards

CLASS ACTION COMPLAINT

1   function as a de facto means to deny any and all claims for mental health coverage

2   as few, if any, residential treatment facilities have on-site clinicians on a 24/7 basis,

3   especially *subacute* residential treatment facilities like Daniels Academy.  Further,

4   Utah—the state in which Daniels Academy operates—does not require residential

5   treatment facilities to be accredited, have on-site clinicians 24/7, *or* have patients

6   seen by a psychiatrist weekly.

## **CLASS ACTION ALLEGATIONS**

8      51.    Plaintiff and the class repeat and re-allege each and every allegation

9   set forth in all of the foregoing paragraphs as if fully set forth herein.

10     52.    Plaintiff brings this action on behalf of himself, his beneficiary son

11  C.D., and all others similarly situated as a class action, pursuant to Rule 23 of the

12  Federal Rules of Civil Procedure.  Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff

13  seeks certification of a class defined as follows:

> All persons covered under Aetna Plans, governed by ERISA, self-
> funded or fully insured, who sought and were denied coverage for all
> or a portion of residential treatment for mental health disorders,
> within the applicable statute of limitations, or whose requests for
> coverage for all or a portion of residential treatment for mental health
> disorders will be denied in the future.

19     53.    Plaintiff and the class reserve the right under Rule 23(c)(1)(C) of the

20  Federal Rules of Civil Procedure to amend or modify the class to include greater

21  specificity, by further division into subclasses, or by limitation to particular issues.

## **A. Numerosity.**

23     54.    The potential members of the proposed class as defined are so

24  numerous that joinder of all the members of the proposed class is impracticable.

25  As of September 30, 2018, Aetna had approximately 22.1 million medical

26  members.[3]  Upon information and belief, a great number of these medical members

27

28  ---
[3]    *See* Aetna Facts, available at https://www.aetna.com/about-us/aetna-facts-and-subsidiaries/aetna-facts.html.

CLASS ACTION COMPLAINT

belonged to Aetna Plans and were denied coverage for all or a portion of residential treatment for mental health disorders. Thus, while the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals covered under Aetna Plans who have been similarly affected as Plaintiff.

### B. <u>Commonality of Questions of Law and Fact</u>.

55.    Common questions of law and fact exist as to all members of the proposed class, which include the following:

- Whether Aetna applied the wrong standard in reviewing class members' claims for coverage for residential treatment of mental health disorders under the Parity Act.

- Whether Aetna applied the wrong standard in reviewing class members' claims for coverage for residential treatment of mental health disorders under the PPACA.

- Whether Aetna applied the wrong standard in reviewing class members' claims for coverage for residential treatment of mental health disorders under the Aetna Plans.

- Whether Aetna breached their fiduciary duties to the class members by relying on the incorrect standard when reviewing class members' claims.

- Whether the class is entitled to injunctive relief.

### C. <u>Typicality of the Claims of the Class Representative</u>.

56.    The claims of the named Plaintiff are typical of the claims of the proposed class. Upon information and belief, the relevant provisions of Plaintiff's Aetna Plan are identical to the provisions in the Aetna Plans belonging to the other class members. Upon information of the belief, Aetna's failure to apply the proper standards when reviewing class members' claims for residential treatment of mental health disorders led to the denial of class members' claims for coverage of residential treatment of mental health disorders, as it did for Plaintiff's claims. This conduct also violated Aetna's fiduciary duties both to the Plaintiff and the proposed class. Because Aetna applied the wrong standard in reviewing these

CLASS ACTION COMPLAINT

claims for coverage, they are required to reprocess these claims. In sum, Plaintiff and all members of the class were also similarly affected by Aetna's wrongful conduct.

### D. Adequacy of Representation.

57.     Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. There are no conflicts of interest between Plaintiff and members of the class and Plaintiff is cognizant of his duties and responsibilities to the entire class. Plaintiff's counsel are competent and experienced in litigating complex litigation and class actions.

### E. Rule 23(b) Requirements.

58.     Absent certification of a class, inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Aetna. Rule 23(b)(1)(A).

59.     Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Rule 23(b)(1)(A).

60.     Aetna has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Rule 23(b)(2).

61.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practicable, and common questions of law and fact exist as to all class members. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23(b)(3).

**F. <u>Notice to the Proposed Class</u>.**

62.     Upon certification, Plaintiff proposes that a notice be mailed and e-mailed to the class members.  The identity and contact information for the class members are known by Aetna. The notice would inform class members on which claims were certified by the Court, provide class members information on how to participate in the lawsuit, as well as information on how to be excluded from the lawsuit.  Plaintiff proposes that class members be given thirty (30) days in which to exclude themselves from the certified action.

**FIRST CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTIES**
**[29 U.S.C. § 1132(a)(1)(B)]**
**(On Behalf of Plaintiff and the Class)**

63.     Plaintiff and the class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

64.     Plaintiff brings this cause of action individually, on behalf of his beneficiary son C.D., and on behalf of the class.

65.     This cause of action is brought pursuant to 29 U.S.C. section 1132(a)(1)(B) to clarify Plaintiff's and class members' rights to future benefits and enforce their rights under their Plans, as a result of Aetna's development, adoption, approval, ratification, and utilization of criteria and claims determination guidelines that determine what residential treatment facilities are covered under the Plans and are far more restrictive than those that are generally accepted in contravention of their ERISA fiduciary obligations under ERISA.

66.     As the entity responsible for making and/or approving mental health benefit determinations under the Aetna Plans, that is also responsible for developing and/or approving practices and policies to facilitate such determinations, Defendant is an ERISA fiduciary.

67.     As an ERISA fiduciary, and pursuant to 29 U.S.C. section 1104(a), Defendant is required to discharge its duties "solely in the interests of the

participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries, and to pay reasonable expenses of administering the Plans.  They must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans they administer.  They must conform their conduct to a fiduciary duty of loyalty and may not make misrepresentations to their insureds.

68.    Defendant violated, and continues to violate, these duties by developing, adopting, approving, ratifying, and utilizing the restrictive coverage determination guidelines discussed hereinabove, and in applying them to claims submitted by Plaintiff and the other class members.  Despite the fact that the insurance plans that insure Plaintiff and the other class members provide for insurance coverage for residential treatment for mental health disorders and that the Parity Act compels this coverage to be equal to that provided for comparable intermediate medical/surgical benefits, Defendant developed, adopted, approved, ratified, and utilized policy provisions to determine which residential treatment facilities receive coverage that are far more restrictive than those that are generally accepted.  In so doing, Defendant did not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." They did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity.

69.    Instead, Defendant elevated its own financial interests, and those of its corporate affiliates, above the interests of Plan participants and beneficiaries, including Plaintiff and all other class members.  By promulgating improperly restrictive policy provisions, Defendant artificially decreased the number and value of covered claims, thereby benefiting itself and its affiliates at the direct expense of Aetna's insureds, including Plaintiff.

70.    To remedy the injuries arising out of Defendant's breaches of its fiduciary duties, Plaintiff—individually, and on behalf of the class—requests a

1   judgment in their favor: (i) declaring that policy provisions complained of herein
2   were developed and utilized in violation of Aetna's fiduciary duties; (ii) issuing a
3   permanent injunction ordering Defendant to cease utilization of the policy
4   provisions complained of herein, and instead adopt, develop, and policy provisions
5   that are consistent with general accepted professional standards; and (iii) ordering
6   Defendant to reprocess claims for residential treatment for mental health disorders
7   that Aetna previously denied in whole or in part, pursuant to new policy provisions
8   that are consistent with federal law.

9   **SECOND CLAIM FOR RELIEF**
**IMPROPER DENIAL OF BENEFITS**
10   **[29 U.S.C. § 1132(a)(1)(B)]**

11   **(On Behalf of Plaintiff and the Class)**

12   71.    Plaintiff and the class repeat and re-allege each and every allegation
13   set forth in all of the foregoing paragraphs as if fully set forth herein.

14   72.    Plaintiff brings this cause of action individually, on behalf of his
15   beneficiary son C.D., and on behalf of the class.

16   73.    This cause of action is brought pursuant to 29 U.S.C. section
17   1132(a)(1)(B).

18   74.    Defendant denied the insurance claims for residential treatment for
19   mental health disorders submitted by Plaintiff and other class members in violation
20   of the terms of Plaintiff's Plan and the plans insuring other class members.

21   75.    Plaintiff and the other class members have been harmed by
22   Defendant's improper benefit denials because they were deprived of insurance
23   benefits they were owed.

24   76.    To remedy these injuries—Plaintiff, individually and on behalf of the
25   class—requests a judgment in his favor ordering Defendant to reprocess claims for
26   residential treatment for mental health disorders that Aetna previously denied in
27   whole or in part, pursuant to new guidelines that are consistent with federal law
28   and the class members' plans.

1
2
3

### THIRD CLAIM FOR RELIEF
### INJUNCTIVE RELIEF
### [29 U.S.C. § 1132(a)(3)(A)]

**(On Behalf of Plaintiff and the Class)**

4
5

77.    Plaintiff and the class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

6
7

78.    Plaintiff brings this cause of action individually, on behalf of his beneficiary son C.D., and on behalf of the class.

8
9

79.    Plaintiff and the class have been harmed, and are likely to be harmed in the future, by Defendant's breaches of fiduciary duty described hereinabove.

10
11
12
13
14
15

80.    To remedy these injuries, Plaintiff and the class are entitled to seek, and do seek, an injunction prohibiting these acts and practices pursuant to 29 U.S.C. section 1132(a)(3)(A) and seek a judgment in their favor ordering Defendant to reprocess claims for residential treatment for mental health disorders that they previously denied in whole or in part, pursuant to new guidelines that are consistent with federal law and the class members' plans.

16
17
18

### FOURTH CLAIM FOR RELIEF
### OTHER APPROPRIATE EQUITABLE RELIEF
### [29 U.S.C. § 1132(a)(3)(B)]

**(On Behalf of Plaintiff and the Class)**

19
20

81.    Plaintiff and the class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

21
22

82.    Plaintiff brings this cause of action individually, on behalf of his beneficiary son C.D., and on behalf of the class.

23
24

83.    This cause of action is brought pursuant to 29 U.S.C. section 1132(a)(3)(B).

25
26

84.    Plaintiff and the class have been harmed, and are likely to be harmed in the future, by Defendant's breaches of fiduciary duty described hereinabove.

27
28

85.    Additionally, by engaging in this misconduct, including denying Plaintiff's claims, Defendant caused itself and its corporate affiliates to be unjustly

CLASS ACTION COMPLAINT

1  enriched as they were not required to pay benefit claims and/or claims under the
2  relevant stop-loss policies.

3       86.    To remedy these injuries, Plaintiff and the class are entitled to seek,
4  and do seek, appropriate equitable relief pursuant to 29 U.S.C. section
5  1132(a)(3)(B), and they seek a judgment in their favor (i) ordering Defendant to
6  reprocess claims for residential treatment for mental health disorders that they
7  previously denied in whole or in part, pursuant to new guidelines that are
8  consistent with generally accepted professional standards and the class members'
9  plans; and (ii) ordering Defendant to pay a surcharge or other make-whole relief
10 to Plaintiff and the other class members in an amount equivalent to the revenue
11 Defendant generated for providing mental health claims administration services
12 with respect to claims filed by Plaintiff and the other class members, expenses that
13 Defendant and their corporate affiliates avoided due to their wrongful denials, the
14 additional revenue Defendant received as a result of those cost-avoidances, the
15 out-of-pocket costs that Plaintiff and other class members incurred following
16 Defendant's wrongful denials, and/or pre-judgment interest.

## **REQUEST FOR RELIEF**

18      Wherefore, Plaintiff, individually, on behalf of his beneficiary son C.D., and
19 on behalf of the class, pray for judgment in their favor against Aetna providing for
20 the relief requested in Counts I-IV above, and providing the additional relief as
21 follows:

22  1. Certify the class for class treatment under Federal Rule of Civil Procedure
23     23;

24  2. Appoint Plaintiff as class representative;

25  3. Appoint Plaintiff's counsel (Qureshi Law, Russell Law, and Miller
       Adesman) as counsel for the class;

26  4. Declare that Defendant may not apply contract provisions, policies or
27     practices that wholly exclude or impermissibly limit services to treat mental
28     health conditions when such exclusions and/or limitations are not applied to
       medical and surgical services;

21

5. Enjoin Defendant from further violations of the Parity Act and its implementing regulations, as incorporated into the terms of the plans it administers;

6. Award Plaintiff disbursements and expenses for this action, including reasonable attorneys' fees, in amounts to be determined by the Court, pursuant to 29 U.S.C. section 1132(g); and

7. Grant such other relief as is just and proper.

DATED: September 21, 2021      Respectfully submitted,

*/s/ Omar Qureshi*

**QURESHI LAW PC**
Omar G. Qureshi (Cal. Bar No. 323493)
omar@qureshi.law
1625 W. Olympic Boulevard, Suite 500
Los Angeles, California 90015
Telephone: (213) 315-5442
Fax: (213) 277-8989

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551

**MILLER ADESMAN, PLC**
Brian M. Adesman (Cal. Bar No. 312663)
adesman@qureshi.law
355 S. Grand Ave., Suite 2450
Los Angeles, California 90071
Telephone: (213) 877-8142

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT